**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BAY AREA CELLULAR TELEPHONE
COMPANY, A CALIFORNIA
PARTNERSHIP, D/B/A AT & T WIRELESS,

       Plaintiff,               No. C 03-4866 PJH

    v.                      **ORDER GRANTING SUMMARY
SUMMARY JUDGMENT IN PART
AND DENYING SUMMARY JUDGMENT
IN PART**

THE CITY AND COUNTY OF SAN
FRANCISCO, CALIFORNIA, et al.

       Defendants.
_____/

      The parties' cross-motions for summary judgment came on for hearing on November 2,

2005 before this court.  Plaintiff Bay Area Cellular Telephone, d/b/a AT & T Wireless ("ATTW")

appeared through its counsel, Marc E. Miller, and defendants the City and County of San

Francisco et al. ("the City") appeared through their counsel, William K. Sanders.  Having read

all the papers submitted and carefully considered the relevant legal authority, the court hereby

GRANTS IN PART and DENIES IN PART plaintiff's motion for summary judgment, and

GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment, for the

reasons stated at the hearing, and as follows.

## BACKGROUND

      ATTW provides wireless telecommunication services in the Bay Area.  On April 23,

2002, ATTW applied to the City for a conditional use permit ("CUP") to install a wireless

facility atop a commercial building located near the intersection of 10th Ave. and Geary

Boulevard in San Francisco.  See Declaration of Chung-Han Lee in Support of ATTW's

Motion for Summary Judgment ("Lee Decl.") Ex. 1.  ATTW claims it needs this installation to

better serve its customers in the Richmond district.

The San Francisco Planning Commission held a hearing on ATTW's application, and conditionally approved it on July 17, 2003. Lee Decl. Ex. 5 at 066-72. A month later, on August 15, 2003, local resident Betty Chiao filed an appeal of the Planning Commission's decision with the San Francisco Board of Supervisors (the "Board"). Lee Decl. Ex. 6 at 084-87. The stated grounds for the appeal were that "the proposed facility is unnecessary, undesirable, and incompatible with the existing character of the neighborhood." Id. at 086.

On September 16, 2003, the Board held a public hearing on the appeal of the Planning Commission's decision. Lee Decl. Ex. 7. At the hearing, a number of community residents testified to varying degrees that ATTW's proposed facility is undesirable, and unnecessary. Id. Many community residents also submitted evidence that wireless coverage in the area is adequate. AR[1] 040-45, 019-26, 047-51, 108-118. ATTW, for its part, submitted the testimony of a Planning Commission representative, as well as technical engineers, to address the issues of necessity and adequate coverage. Lee Decl. Ex. 7 at 055-65.

After hearing the evidence before it, the Board unanimously voted to deny ATTW the CUP. Lee Decl. Ex. 8. The Board then adopted written findings and issued a written denial on September 30, 2003. Lee Decl. Exs. 9-10.

As a result of the Board's decision, ATTW claims the City violated section 332(c)(7) of the Telecommunications Act of 1996 ("TCA"). See 47 U.S.C. § 151 et seq. Specifically, ATTW asserts the following four causes of action[2]:  (1) that the Board violated the substantial evidence requirement of the TCA; (2) that the Board improperly based its decision on the environmental effects of radio frequency emissions; (3) that the Board unreasonably discriminated against ATTW; and (4) that the Board's decision improperly prohibited the

---

[1]        The court refers herein to the administrative record, which was filed by the City as "Certified Copy of the Administrative Record," as "AR."

[2]        In addition to these four causes of action, ATTW brought a claim against the City pursuant to 42 U.S.C. § 1983. However, at the hearing counsel for ATTW stated that this claim was being withdrawn. Accordingly, this claim is dismissed.

2

provision of personal wireless services.

Both parties now move for summary judgment on all four claims.[3]

**ANALYSIS**

A.    Legal Standard

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The court will resolve all disputed issues of fact in favor of the non-moving party.  Id. at 255.

B.    Substantial Evidence

Under the TCA, a local government's decision to deny a request to construct a wireless facility must be based upon "substantial evidence."  47 U.S.C. § 332(c)(7)(B)(iii).  A city's decision is considered supported by substantial evidence if the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 725 (9th Cir. 2005); Telespectrum v. Public Service Commission, 227 F.3d 414, 423 (6th Cir. 2000).  This requires "more than a scintilla of evidence but less than a preponderance."  MetroPCS, F.3d at 725.  In conducting such a review, the court must examine the entire record, including evidence unfavorable to the city.  Id.

The parties' arguments regarding the substantial evidence requirement are twofold: first, the partes raise arguments as to the proper scope of applicable laws that the Board was required to consider.  Specifically, ATTW claims that the Board was required to take the Wireless Telecommunications Services Facilities Siting Guidelines ("WTS Guidelines"),

---

[3]    The parties have also concurrently filed: (1) requests for judicial notice of certain sections of the San Francisco Planning Code, Charter, and WTS Guidelines; (2) requests for administrative leave to file certain documents under seal; and (3) objections to evidence (filed on behalf of the City only).  The court hereby: (1) GRANTS both parties' judicial notice requests; (2) GRANTS the administrative requests, with the exception of the parties' briefs, which the court declines to file under seal; and (3) SUSTAINS the City's objections to evidence, with the exception of the City's objection to Ex. G of the Lee Declaration, which the court OVERRULES.

United States District Court

For the Northern District of California

1   adopted by the Planning Commission in 1996, into account.  The City maintains that only the

2   Planning Code controls.  Second, the parties dispute whether the actual evidence considered

3   by the Board, including the public testimony by local residents, is sufficient to satisfy the

4   substantial evidence requirement.

5             1.      Scope of Applicable Laws

6        When conducting a "substantial evidence" inquiry, "local and state zoning laws govern

7   the weight to be given the evidence."  MetroPCS, F.3d at 725.  A city's interpretation of its

8   own zoning laws "is entitled to great weight and should be respected by the court unless it is

9   clearly erroneous or unauthorized."  Carson Harbor Village Ltd. v. City of Carson, 70 Cal. App.

10  4th 281, 290 (1999).

11       The WTS Guidelines were enacted by the Planning Commission with the aim of

12  providing "comprehensive policies and guidelines" for use in evaluating applications for

13  CUPs.  See Lee Decl., Ex. 3 at 1183-84.  On their face, the Guidelines do not purport to be

14  duly enacted laws.  Rather, they are a statement of policies that set forth the applicable

15  standards under which the Planning Commission is to apply the Planning Code.  Id.  As such,

16  they do not have the force of binding law.

17       Accordingly, there is no basis here for enlarging the scope of the substantial evidence

18  inquiry to include the WTS Guidelines in addition to the Planning Code (which neither side

19  disputes does have the force of binding law).

20            2.      Sufficiency of Evidence

21       ATTW urges the court to consider the weight of the evidence considered by the Board.

22  Specifically, it takes issue with the anecdotal and personal testimony in evidence at the

23  hearing before the Board, and argues that in view of ATTW's technical testimony, such

24  anecdotal and personal testimony cannot qualify as substantial.

25       The Ninth Circuit's MetroPCS decision considered this same argument, and controls

26  here.  In MetroPCS, as here, the Board had denied a CUP application on the basis of oral

27  testimony and numerous written petitions from local neighborhood residents, reporting that

28

United States District Court

For the Northern District of California

1  adequate wireless coverage already existed.  The Ninth Circuit affirmed this court's holding

2  that such evidence was substantial.  In so doing, the Ninth Circuit acknowledged that "the

3  Board's inquiry into this issue was not a model of thoroughness or rigor," but taken in totality,

4  the evidence constituted a showing that at the very least, "a reasonable mind might accept" as

5  adequate.  400 F.3d at 726.

6      So here.  It is undisputed that the record reflects testimony on the part of many

7  residents (at least 20) stating that the wireless coverage was adequate, and that there was no

8  need for the proposed facility.  See generally Lee Decl., Ex. 7.  It is also undisputed that the

9  Board's findings state that they were grounding their decision to overturn the Planning

10 Commission's ruling on the fact that the proposed facility was unnecessary, pursuant to the

11 Planning Code.  Lee Decl., Ex. 10.  Even though ATTW also submitted "technical" evidence to

12 the contrary, this court finds that, under MetroPCS, "a reasonable mind" might accept the

13 testimony before the Board as adequate.

14     Accordingly, summary judgment as to ATTW's substantial evidence claim is

15 GRANTED in favor of the City, and DENIED as to ATTW.

16     C.     RF Emissions

17     ATTW claims that the City based its denial on the purported adverse environmental

18 effects of radio frequency ("RF") emissions, in violation of 47 U.S.C. § 332(c)(7)(B)(iv).

19 Section 332(c)(7)(B)(iv) states: "No State or local government or instrumentality thereof may

20 regulate the placement, construction, and modification of personal wireless service facilities

21 on the basis of the environmental effects of radio frequency emissions to the extent that such

22 facilities comply with the Commission's regulations concerning such emissions."  See also

23 MetroPCS, 400 F.3d at 736; Iowa Wireless Services, L.P. v. City of Moline, 29 F. Supp. 2d

24 915, 924 (C.D. Ill. 1998) (emissions may not be the sole reason for the denial of a permit).

25     MetroPCS again controls.  There, the Ninth Circuit found that the Board did not

26 improperly base its decision on environmental concerns, despite the fact that many of the

27 opponents of MetroPCS' CUP application stated at the hearing that their comments were

28

United States District Court

For the Northern District of California

1    based on health concerns.  See 400 F.3d at 736.   In so holding, the Ninth Circuit found

2    instructive the fact that the Board's formal decision did not once mention RF emissions, and

3    the Board never stated that it was basing its decision on all public comments.

4         The same result is mandated here.  ATTW has pointed to the existence of three

5    comments at the hearing which were purportedly motivated by concern over RF emissions.

6    AR 047-48, 054.  However, even assuming this to be the case (only one comment actually

7    claims that the installation would cause negative health effects), it is undisputed that these

8    comments represent a small minority of the total evidence considered by the Board, and that

9    the Board at any rate expressly stated that its decision was *not* based on concerns over RF

10   emissions.  AR 129.  As such, the holding in MetroPCS controls.

11        ATTW urges the court to view the Board's findings as a mere pretext, and to look past

12   the findings to determine that the Board was in actuality motivated by concerns over adverse

13   health effects.  The court declines to do so.  In the first place, ATTW provides no authority for

14   overlooking and contravening the Board's express findings where, as here, the only

15   undisputed evidence ATTW can point to is a small sample of testimony that only ambiguously

16   lends support for its argument.  In the second, ATTW's argument flies directly in the face of

17   MetroPCS, which, as stated above, requires a finding that the City did not improperly base its

18   decision on adverse health effects under the undisputed facts here.     Accordingly, summary

19   judgment as to ATTW's claim that the City improperly based its decision on adverse health

20   effects is GRANTED in favor of the City, and DENIED as to ATTW.

21        D.    Unreasonable Discrimination

22        ATTW next asserts that the City unreasonably discriminated against it in violation of 47

23   U.S.C. § 332(c)(7)(B)(I) of the TCA.  This provision states that "[t]he regulation of the

24   placement, construction, and modification of personal wireless service facilities by any State

25   or local government or instrumentality thereof – (I) shall not unreasonably discriminate among

26   providers of functionally equivalent services."  47 U.S.C. § 332(c)(7)(B)(I).

27        In determining whether a CUP should be granted to a telecommunications services

28

6

United States District Court

For the Northern District of California

1    provider, the Ninth Circuit has held that "some discrimination among providers of functionally

2    equivalent services is allowed.  Any discrimination need only be reasonable." MetroPCS, 400

3    F.3d at 727; see also Sprint Spectrum v. Willoth, 176 F.3d 630, 638 (2d Cir. 1999).  In

4    demonstrating that discrimination is *not* reasonable, "providers alleging unreasonable

5    discrimination must show that they have been treated differently from other providers whose

6    facilities are 'similarly situated' in terms of the 'structure, placement or cumulative impact' as

7    the facilities in question." MetroPCS, 400 F.3d at 727.

8           Here, ATTW bases its unreasonable discrimination claim on the fact that (1) the City

9    previously granted Cingular[4] the right to have its wireless facility on the very same Property in

10   question; and (2) the City also previously granted Metricom the right to place 16 antennas on

11   the same Property.  Accordingly, the issue before the court is whether the City's denial of

12   ATTW's CUP was reasonable in light of the permits previously granted to Cingular and

13   Metricom regarding the same Property.

14          1.   Cingular

15          The City does not dispute that it previously granted Cingular the right to house a

16   wireless facility on the same Property on which ATTW now seeks to install its own.  It

17   contends, however, that its decision to deny ATTW's CUP is nonetheless reasonable because

18   ATTW and Cingular are not "similarly situated," as contemplated under MetroPCS.  This is so,

19   argues the City, by virtue of (a) the cumulative impact that a second wireless facility would

20   have on the neighborhood; and (b) the different permit process that governed the grant of the

21   City's permit to Cingular.

22          While the City fails to prove the first of these, it persuasively argues the second.

23          (a)   cumulative impact

24          The City correctly asserts that proof of cumulative impact on a property already housing

25   other facilities may, in some cases, render the denial of additional facilities reasonable.  See,

---

27   [4]       During the time period in question here, Cingular was known as Pacific Bell.  For

28   purposes of this order, however, the court refers to Cingular by its current name.

United States District Court

For the Northern District of California

1   e.g., Airtouch Cellular v. City of El Cajon, 83 F. Supp. 2d 1158, 1166 (S.D. Cal. 2000).  This

2   argument does not actually benefit the City, however, for the City has not pointed to any

3   evidence in the record demonstrating the cumulative impact that ATTW's facility would have

4   on the property.  Indeed, the City relies solely on various provisions contained in the WTS

5   Guidelines for support of its cumulative impact argument.  The WTS Guidelines, as already

6   stated, are non-binding policies adopted by the Planning Commission for aid in evaluating

7   CUP applications.  They cannot take the place of factual evidence.

8        As such, the City cannot prove that its denial of ATTW's CUP was reasonable by virtue

9   of the cumulative impact of ATTW's proposed facility.

10                     (b)     permit process

11       It is undisputed that at the time that Cingular was allowed to install a wireless facility on

12   the same Property on which ATTW seeks to install its facility (i.e., in 1995), the permit process

13   governing the installation of wireless facilities was different.  Specifically, under applicable city

14   law at the time, Cingular only needed to apply for a building permit issued by the City's

15   Department of Building Inspection, rather than a CUP.  See Ionin Declaration in Support of the

16   City's Motion for Summary Judgment, ¶¶ 3-4, Ex. A.  Accordingly, Cingular was not required,

17   as ATTW was, to demonstrate compliance and/or compatibility with the Planning Code prior

18   to issuance of its permit.

19       The issue before the court is whether the City's denial of ATTW's CUP was

20   unreasonable given the change in permit process that had taken place.  The court can find no

21   authority, nor have the parties cited any, dealing with this issue of an intervening change in law.

22   The issue is one of first impression.  As such, the court holds that the City's denial of ATTW's

23   CUP was not unreasonable.  It simply cannot, and should not, be said that the City's denial of

24   a subsequent permit is unreasonable where – as here – such a claim is based on the prior

25   grant of a building permit nearly 10 years earlier, pursuant to different law, taking into

26   consideration different factors, and issued by a different governing body.  Indeed, to hold

27   otherwise would expose the City to potential discrimination claims for all prior permits issued

28

United States District Court

For the Northern District of California

1   under different laws and pursuant to different procedures.  This, in turn, would render

2   meaningless the evaluations and findings made by both the Board and the Planning

3   Commission in choosing to grant those prior permit holders the right to install their various

4   facilities.  This cannot be what the TCA contemplated when it was enacted.

5   Accordingly, on the issue of whether the City unreasonably discriminated against ATTW,

6   based on the City's prior grant of a building permit to Cingular, summary judgment is

7   GRANTED in favor of the City, and DENIED as to ATTW.

8               2.      Metricom[5]

9        ATTW asserts, as a secondary ground for finding unreasonable discrimination, that the

10  City discriminated against it by previously granting Metricom a CUP to install 16 antennas on

11  the same Property on which ATTW now seeks to install its own.  The City does not dispute that

12  it granted Metricom the above CUP, but asserts that this can provide no basis for a finding of

13  unreasonable discrimination since Metricom did not provide "personal wireless services" that

14  were "functionally equivalent" to those provided by ATTW.[6]

15              (a)     "personal wireless services"

16       The parties dispute whether Metricom is a provider of "personal wireless services," as

17  that term is defined under the TCA.  The TCA, somewhat unhelpfully, defines the term

18  "personal wireless services" to mean "commercial mobile services, unlicensed wireless

19  services, and common carrier wireless exchange access services."  See 47 U.S.C. §

20  332(c)(7)(C)(I).  ATTW contends that the court should rely on the definition provided by the

21

22       [5]      The City argues that, as an initial matter, ATTW cannot proceed on its claims
    regarding Metricom because ATTW failed to make any allegations as to Metricom in its
23  complaint (though neither party disputes that the allegations came to light through the course of
    proper discovery).  At the hearing, the court raised, and ATTW was amenable to, the issue of
24  amending the complaint in order to include the Metricom allegations. Despite this exchange, the
    court hereby deems the Metricom allegations incorporated as part of ATTW's complaint.  ATTW
25  need not separately amend its complaint.

26       [6]      The City also argues that no unreasonable discrimination occurred because
    Metricom is not similarly situated to ATTW, in that the Metricom CUP was never appealed to the
27  Board.  The court finds this argument unpersuasive; contrary to the different permit process in
    effect for Cingular, a mere failure to appeal does not qualify as a sufficient change in law or
28  process, on its own, to circumvent a finding of unreasonable discrimination.

9

TCA itself in resolving this inquiry.  The City contends that the definition provided by Sprint Spectrum v. Willoth, 176 F.3d 630 (2d Cir. 1999), in which "personal wireless services" was interpreted to refer to voice telephone services only, should control.

Neither the court nor the parties have found any Ninth Circuit authority in which the term "personal wireless services" is defined.  As such, the court is free to look to persuasive authority as a guide.  Sprint Spectrum, however, does not provide that guidance.

In Sprint Spectrum, Sprint desired to convert its analog cellular technology in the Buffalo, New York area to PCS technology, which utilized digital cellular technology.  When Sprint's application to do so was denied by local authorities, Sprint claimed it had been unreasonably discriminated against, and that local authorities had improperly prohibited the provision of personal wireless services, all in violation of the TCA.  In analyzing Sprint's claims, the Second Circuit concluded that, "in the context of [that] case," the definition of "personal wireless services" referred to "the ability of mobile, handheld telephones to reach a cell site that provides access to a land-line exchange and allows phone calls to be made to and from the national telephone network."  Sprint Spectrum, 176 F.3d at 641.  In other words, "personal wireless services" was construed to refer solely to telephone services.[7]

While the City understandably urges this court to adopt a similar definition, this argument is too forced.  The TCA would be rendered obsolete as a policy matter, if "personal wireless services" were read to refer only to telephone services.  The concept of wireless services is constantly evolving, and technological advances – especially since 1999, when Sprint Spectrum was decided – have brought the wireless provider market to the point where traditional telephone-only service providers are now providing services that expand beyond

---

[7]     In Sprint Spectrum, the Second Circuit did not engage in an analysis of what "personal wireless services" means with respect to the unreasonable discrimination claim, but rather with respect to the prohibition of wireless services claim.  While ATTW contends that this distinction makes the case inapposite for our purposes, the court disagrees.  The definition for "personal wireless services" that applies to the prohibition of wireless services claim is based on the same definition that applies to unreasonable discrimination claims under the TCA.  See 47 U.S.C. § 332(c)(7)(b)(i)(I-II) and (C)(i-iii).  Accordingly, the Second Circuit's analysis is relevant to the unreasonable discrimination claim we face here.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   the boundaries of telephone service alone.  Indeed, ATTW itself is proof of this, as by its own

2   admissions, it attempts to upgrade its services to provide newer offerings that include the

3   provision of Internet services.  See, e.g., Lee Decl. Ex. 4.  As such, the court finds that the

4   overall purpose and intent of the TCA supports a broader definition of "personal wireless

5   services" rather than the narrower definition espoused by Sprint Spectrum.

6         Moreover, this finding is consistent with the TCA's stated definition for "personal

7   wireless services," which is defined to mean, in part, "unlicensed wireless services."  This

8   definition on its face is broad enough to encompass Metricom's offerings, which include, by

9   the City's own admission, "wireless Internet services on unlicensed spectrum."  See

10   Declaration of Jonathan L. Kramer in Opposition to ATTW's Motion for Summary Judgment

11   ("Kramer Decl."), ¶ 10.

12         As such, Metricom is deemed a provider of "personal wireless services" pursuant to 47

13   U.S.C. § 332(c)(7)(B)(I) of the TCA.

14                 (b)    "functionally equivalent"

15         The parties also dispute whether the services that Metricom and ATTW provide are

16   "functionally equivalent."  ATTW asserts that they are, as both Metricom and ATTW sought to

17   provide wireless Internet services.  The City contends they are not, and points to the Kramer

18   Declaration in support of the fact that Metricom's Internet services are not functionally

19   equivalent to ATTW's "voice telephone services."  See Kramer Decl., ¶ 11.

20         Preliminarily, the court must first address what the term "functionally equivalent" means.

21   Again, there is no controlling Ninth Circuit authority that addresses the definition of, or

22   requirements for, "functional equivalence" under the TCA.  As such, both parties again urge

23   the adoption of sister circuit case law in deciding the issue.  The City relies on Aegerter v. City

24   of Delafield, Wisconsin, 174 F.3d 886 (7th Cir. 1999), and ATTW relies on Nextel West Corp.

25   v. Unity Township, 282 F.3d 257 (3d Cir. 2002).

26         In Aegerter, the issue was whether a provider of a one-way paging service was

27   functionally equivalent to two-way cellular telephone service.  In holding that the two were not

28

United States District Court

For the Northern District of California

1   functionally equivalent, the Seventh Circuit crafted its own interpretation of what "functionally

2   equivalent" means.  In sum, the court analogized the functional equivalence test under the TCA

3   to the relevant market analysis that must be undertaken under antitrust law, and held that

4   functional equivalence exists if two services or products are direct substitutes for one another

5   (which inquiry in turn took into account service, product, and cost comparison).  See 174 F.3d

6   at 891.

7          Nextel West, by contrast, took a broader approach and held that "the equivalency of

8   function relates to the telecommunications services the entity provides, not to the technical

9   particularities (design, technology, or frequency) of its operations."  282 F.3d at 266 n.13.  It

10  then went on to hold that Nextel and Sprint, the two competing providers in that case, were

11  functionally equivalent, as they both provided "personal wireless communications services" to

12  remote users.

13         The court finds that Nextel West provides the better approach.  Though broad in its

14  definition of "functional equivalence," there is no question but that it purports to mirror the

15  language of the TCA itself, while the antitrust analysis that Aegerter employs is tenuous, at

16  best; there is no indication in any persuasive authority that antitrust law is regularly employed

17  as an analogous field of law in the telecommunications arena.  Accordingly, the court hereby

18  finds that "functional equivalence," as referenced in the TCA, relates to the

19  telecommunications services that the actual competing entities provide, and does not relate to

20  the specific design, technology, or frequencies employed in the operation of the

21  telecommunications services themselves.

22         Having made this determination, the court must now decide whether, under the above

23  definition, Metricom and ATTW provide equivalent telecommunications services.  The City,

24  through the Kramer Declaration, indicates that the two entities do not provide equivalent

25  services, since Metricom provided "wireless Internet services on unlicensed spectrum," and

26  ATTW "provides voice telephone services to its subscribers ... pursuant to a license issued by

27  the Federal Communications Commission."  Kramer Decl., ¶¶ 10-11. ATTW, by contrast,

28

12

United States District Court

For the Northern District of California

1   points to the fact that both ATTW and Metricom sought to provide Internet services.  See, e.g.,

2   Lee Decl. Ex. 4 at D0659, D0692-93.

3          Given this competing testimony regarding the actual services provided by ATTW and

4   Metricom, the court finds that a triable issue of fact exists as to the extent and nature of the

5   services offered by both entities.  Only after consideration of all the evidence as to this issue,

6   can the court correctly decide whether any unreasonable discrimination among functionally

7   equivalent providers has occurred.

8          Accordingly, on the issue of whether the City unreasonably discriminated against

9   ATTW, based on the City's prior grant of a building permit to Metricom, summary judgment is

10  DENIED as to both parties.

11         E.      Prohibition of Wireless Services

12         ATTW claims that the City's decision has the effect of prohibiting the provision of

13  wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  Section 332(c)(7)(B)(I) states

14  that: "[t]he regulation of the placement, construction, and modification of personal wireless

15  service facilities by any State or local government or instrumentality thereof – (II) shall not

16  prohibit or have the effect of prohibiting the provision of personal wireless services."

17         A plaintiff can prove that it is prohibited from providing wireless services by proving that

18  it has been "prevented from filling a significant gap in its own service coverage."  See

19  MetroPCS, 400 F.3d at 733 (noting also that "significant gap" determinations are "extremely

20  fact-specific inquiries that defy any bright-line legal rule.").  Once a wireless service provider

21  has demonstrated that the requisite significant gap in coverage exists, it must then make

22  some showing that the manner in which it proposes to fill the significant gap in service "is the

23  least intrusive on the values that the denial sought to serve."  Id. at 734-35.

24         1.      Significant Gap

25         The parties dispute whether a "significant gap" in ATTW's coverage exists.  Both

26  parties seek to prove the significant gap issue through presentation of expert testimony.  But

27  as to that expert testimony, the parties are at odds.  ATTW attacks the expert testimony of the

28

United States District Court

For the Northern District of California

1   City's expert, Mr. Kramer.  <u>See</u> Lee Reply Decl., ¶ 8, Ex. F.  The City, by contrast, attacks

2   ATTW's expert, Mr. Pontin.  <u>See e.g.</u>, Declaration of William Sanders in Opposition to

3   ATTW's Motion, Ex. A.  Both allege that the testimony discloses opposite results – that either

4   a significant gap did, or did not, exist.  Accordingly, the dispute is material, and the trier of fact

5   is entitled to assess the evidence and choose what weight to give it.

6                       2.    <u>Least Intrusive Means</u>

7        For the reasons above, the court need not even reach the "least intrusive" element, but

8   even if it did, it would find that the same is true as above – the parties materially dispute the

9   various alternatives that would have been available to ATTW as a means of filling any

10  purported "significant gap."[8]

11       In essence, the parties dispute whether ATTW could have converted its existing TDMA

12  facilities to GSM facilities, retained ownership of the Cingular facility already existing on the

13  Property, or allowed its customers to obtain service from the T-Mobile wireless services

14  network.  These disputes are material in that they directly bear on whether they were the least

15  intrusive means for ATTW to fulfill any significant gap, if it existed.

16       Accordingly, on the issue of whether the City prohibited the provision of wireless

17  services in violation of the TCA, summary judgment is DENIED as to both parties.

18       F.    Conclusion

19       Summary judgment as to ATTW's claim that the Board violated the substantial

20  evidence requirement of the TCA is GRANTED as to the City and DENIED as to ATTW.

21  Summary judgment as to ATTW's claim that the Board improperly based its decision on the

22  environmental effects of radio frequency emissions is GRANTED as to the City and DENIED

23  as to ATTW.  Summary judgment as to ATTW's unreasonable discrimination claim is

24  GRANTED as to the City and DENIED as to ATTW, but only as to ATTW's allegations

25

26       [8]    Preliminarily, the parties dispute whether consideration should be given to events
    that occurred after the denial of ATTW's CUP application.  ATTW contends that the court should
27  not consider lesser intrusive alternatives post-denial, as these alternatives would not have been
    available at the time the CUP was considered.  The City disagrees.  The court finds ATTW's
28  argument persuasive and resolves the issue in favor of ATTW.

regarding Cingular; summary judgment on this claim is DENIED as to both parties as to

ATTW's allegations regarding Metricom.  Finally, summary judgment as to ATTW's claim that

the Board's decision improperly prohibited the provision of personal wireless services is

DENIED as to both parties.

**IT IS SO ORDERED.**

Dated: November 23, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge

**United States District Court**
For the Northern District of California

15